# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| ROGER BIRDBEAR, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.  16-75L |
| v. | ) | (Filed: September 27, 2023) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Michael R. Cashman, John J. Steffenhagen, Ryan M. Theis, and Brian W. Nelson, Hellmuth & Johnson, PLLC, Edina, Minn., for Plaintiffs. Terrance W. Moore, Hellmuth & Johnson, PLLC, Edina, Minn., Of Counsel.

Thomas A. Benson, Nicholas A. McDaniel, and Amanda Stoner, Environment & Natural Resources Division, U.S. Department of Justice, Washington, D.C., with whom was Todd Kim, Assistant Attorney General, for Defendant. Karen Boyd, Christopher King, and Robert Merritt, Office of the Solicitor, U.S. Department of the Interior, Washington, D.C., Of Counsel.

## OPINION AND ORDER

**Kaplan, Chief Judge.**

Before the Court are 1) the government's motion to exclude testimony that it contends is irrelevant and/or cumulative, Def.'s Mot. to Exclude Test., ECF No. 226; and 2) the government's motion to exclude evidence as to Counts 1, 5, 11, and 12 of Plaintiffs' Third Amended Complaint, Def.'s Mot. to Exclude Evid., ECF No. 244. The Court heard oral argument on these motions on September 8, 2023. See Order, ECF No. 247.

For the reasons set forth below, the government's motion to exclude testimony is **DENIED**. Its motion to exclude evidence as to Counts 1, 5, 11, and 12 is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.      The Government's Motion to Exclude Witness Testimony

On June 22, 2023, the government moved in limine to exclude the trial testimony of seven current and former employees of the Department of the Interior ("DOI"). See Def.'s Mot.

to Exclude Test.[1] Four of them—Michael Curry, Marvin Hamsher, Paul Tyler, and John Barder—are either current or former employees within the Office of Natural Resources Revenue ("ONRR"). Pls.' Witness List at 2–3, 5, 9. The fifth is retired Office of Special Trustee ("OST") employee Austin Gillette. Id. at 9.[2] And the remaining two are Pascual Laborda, a former Supervisory Petroleum Engineer for the Bureau of Land Management ("BLM"), and Michael Black, who formerly served as a Regional Director within the Bureau of Indian Affairs ("BIA"). Id. at 1–2, 4.

### A.      The ONRR and OST Employees

The Court agrees with the government that it is not apparent why ONRR employees Curry, Hamsher, Tyler, and Barder, or former OST employee Gillette, would have relevant testimony to offer with respect to the claims that remain in this case after the Court's decision on summary judgment. As the government explains, ONRR and OST provide "revenue management services for mineral leases on American Indian lands," including the collection, disbursal, and auditing of royalties. Def.'s Mot. to Exclude Test. at 7 (quoting App. to Pls.' Opp'n to Def.'s Cross-Mot. for Summ. J. & Reply in Supp. of Pls.' Mot. for Summ. J. ("App. to Pls.' Resp.") Ex. 18 (ONRR's Oil and Gas Indian Payor Handbook) § 1.3, ECF No. 188-19). But the claims that remain in the case do not implicate these responsibilities. Rather, they concern whether and to what extent the government, as trustee of Plaintiffs' allotted lands, breached its duties to prevent drainage of Plaintiffs' mineral resources (Count 3), to ensure diligent development of Plaintiffs' lands under lease (Count 8), and to enforce regulations governing the venting and flaring of natural gas from Plaintiffs' allotments (Count 12). See Third Am. Compl. ¶¶ 46–57, 81–88, 107–22, ECF No. 147.

Also at issue, albeit to a limited degree (as discussed below), are Plaintiffs' allegations that the government did not adequately advertise leases of their lands and that it approved leases that were not in their best interests (Count 1). See id. ¶¶ 36–41. This claim again concerns fiduciary obligations for which BLM and BIA are responsible—not ONRR or OST. As the Court explained in its decision last year on the parties' cross-motions for summary judgment, federal regulations and DOI manuals place BLM at the center of the government's obligations to prevent drainage of allottees' mineral resources and to ensure diligent development of their leases. Op. & Order at 10–13, ECF No. 207; see also 25 C.F.R. §§ 211.47(b), 212.47; 43 C.F.R. Subpart 3162;

---

[1] The government's motion also sought to exclude the testimony of DOI Secretary Deb Haaland, whom Plaintiffs had named as a possible witness in their pretrial submissions. Def.'s Mot. to Exclude Test. at 3–5; Pls.' Witness List at 10, ECF No. 221. Because Plaintiffs advised the Court at oral argument that they no longer intended to call the Secretary as a witness, that aspect of the government's motion in limine is moot.

[2] The government explains that OST's financial functions were subsumed in 2020 by the newly established Bureau of Trust Funds Administration. Def.'s Mot. to Exclude Test. at 6 n.3. Because Mr. Gillette apparently retired from OST in 2018, before DOI established the Bureau of Trust Funds Administration, his testimony will likely reference OST and not the current bureau. See Pls.' Resp. to Def.'s Mot. to Exclude Test. Ex. 16, at 9 (Gillette Dep. at 34:15–22), ECF No. 235-16. The Court similarly will refer to OST in this Opinion.

App. to Pls.' Resp. Exs. 2–3, 8 (BLM's 1991 Indian Diligent Development manual, 1999 Drainage Protection Guidelines, and 2015 Drainage Protection Manual), ECF Nos. 188-2, 188-3, 188-9. BLM also regulates the venting and flaring of natural gas on allotted lands. See Waste Prevention, Production Subject to Royalties, and Resource Conservation, 87 Fed. Reg. 73588 (proposed Nov. 30, 2022) (discussing BLM's decades-long history of regulating venting and flaring, as well as the statutory authority for doing so). BIA, for its part, advertises and approves leases for oil and gas development on allotted lands. See App. to Pls.' Resp. Ex. 6 (BIA's 2012 Fluid Mineral Estate Procedural Handbook) § 1.2(A) (listing BIA's responsibilities with respect to oil and gas leases), ECF No. 188-7.

The information that Plaintiffs have provided regarding the testimony they intend to elicit from the ONRR employees suggests that the testimony is not relevant to the issues remaining in this case. In their witness list, for example, Plaintiffs advise that all of the ONRR witnesses "will be examined on Defendant's royalty valuation program, royalty collection, compliance reviews, and audit reviews," as well as the government's duty "to ensure Plaintiffs are fully and accurately compensated for their land and mineral resources and royalties." Pls.' Witness List at 2–3, 5, 9. But the Court struck from Plaintiffs' Third Amended Complaint their allegation that the government failed to properly calculate royalties (Count 2). Op. & Order at 22, 25; see also Third Am. Compl. ¶¶ 42–45. And it granted the government's motion for summary judgment as to Plaintiffs' claims that DOI breached its duty to collect and pay all royalties due to Plaintiffs (Count 4) and to audit production and revenue records to prevent lessees from improperly applying transportation allowances to reduce royalties (Count 6). Op. & Order at 21–23, 25; see also Third Am. Compl. ¶¶ 58–62, 69–74. Much of the ONRR witnesses' proposed testimony, as described in the witness list, appears therefore to relate to counts that are no longer part of the case.

Plaintiffs' written response to the government's motion to exclude the ONRR and OST witnesses also suggests that they will be offered to testify about subjects that are not relevant to the claims that remain in the case. See Pls.' Resp. to Def.'s Mot. to Exclude Test. at 8–14, ECF No. 235. For example, Plaintiffs state that it is their intention that 1) Mr. Barder will testify about communitization agreements; 2) Mr. Curry will testify about "ONRR's workload and lack of resources" and about the "deductions and transportation allowances" that lessees apply to royalties; 3) Mr. Tyler will speak about "ONRR's audits of Plaintiffs' royalties" and "his personal interactions with Plaintiffs' regarding ONRR's fiduciary obligations to Plaintiffs"; 4) Mr. Hamsher can discuss his correspondence with Plaintiffs about their requests for audits "regarding unpaid royalties"; and 5) Mr. Gillette will testify that "royalty and lease payments were not made and/or were delayed to beneficiaries' [Individual Indian Money] accounts" because of staffing shortages and other problems he observed. Id.

As best the Court can tell, little, if any, of this testimony would be relevant to the counts remaining for trial. The Court granted the government's motion for summary judgment as to Plaintiffs' claim that DOI improperly approved communitization agreements (Count 7). Op. & Order at 23–25. Likewise, as noted, Plaintiffs' claims concerning transportation allowances and unpaid royalties were also resolved on summary judgment. Id. at 21–23, 25. Furthermore, the Court fails to see how testimony about ONRR's heavy workload and its alleged reluctance to share audit manuals or results is relevant to Plaintiffs' drainage, diligent development, and

venting and flaring claims. See Pls.' Resp. to Def.'s Mot. to Exclude Test. at 10, 12; see also, e.g., id. Ex. 3, at 3 (2016 email from Mr. Tyler to Roger Birdbear explaining that ONRR's policies and procedures for conducting audits are "highly confidential"), ECF No. 235-3; id. Ex. 10 (2020 email from Mr. Hamsher to Roger Birdbear explaining that an audit of one of Plaintiffs' leases was still ongoing), ECF No. 235-10.

Nonetheless, the Court acknowledges the possibility that at least some of the current and former ONRR and OST employees may have some information that is relevant to Plaintiffs' surviving claims. It notes, for example, that ONRR plays a role in determining whether lessees were authorized to vent and flare natural gas. See Def.'s Cross-Mot. for Summ. J. and Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Cross-Mot. for Summ. J.") Ex. 7 (Schimke Decl.) ¶ 15 (explaining that ONRR "looks at whether a company was authorized to vent or flare gas" or whether "the venting or flaring was determined by BLM to be 'unavoidable'" (emphasis omitted)), ECF No. 180-4.

At this point, the Court is not prepared to find that none of the ONRR and OST witnesses Plaintiffs have identified has personal knowledge of information relevant to Plaintiffs' surviving claims, and so will deny the government's motion to exclude their testimony. The Court cautions Plaintiffs, however, that at trial it will not hear testimony by the ONRR and OST witnesses (or any others for that matter) concerning topics that are not relevant to the specific drainage, diligent development, and venting and flaring claims that remain in this case.

In addition, Federal Rule of Evidence 403 empowers the Court to exclude evidence when its "probative value is substantially outweighed by" the risk that the evidence will "wast[e] time" or be "needlessly . . . cumulative."  The Court therefore suggests that Plaintiffs reconsider whether it is necessary for all five of these individuals to be called to testify, or whether one or two will suffice.

### B.      Testimony of BLM and BIA Witnesses

Plaintiffs identify ten current and former BLM and BIA employees as potential witnesses for trial. Pls.' Witness List at 1–6, 8–12. The government acknowledges that these witnesses could provide relevant testimony. Def.'s Mot. to Exclude Test. at 9. It argues, however, that Plaintiffs' witness list is "excessive." Id. It asks the Court to exclude testimony from two of the witnesses: former BLM Supervisory Petroleum Engineer Pascual Laborda and former BIA Regional Director Michael Black. Id. at 11–12. The government asserts that other witnesses can provide the same testimony and that theirs would be unnecessarily cumulative. Id.

The Court agrees that the number of BLM and BIA witnesses Plaintiffs propose to call to testify appears excessive, especially since Plaintiffs describe the BLM and BIA witnesses' testimony in nearly identical terms. See Pls.' Witness List at 1–6, 8, 10–11 (stating, for example, that each BLM witness "will be examined on Defendant's obligation to maximize Plaintiffs' best economic interests . . . to prevent uncompensated drainage . . . [and] to ensure that Plaintiffs' tracts are and have been diligently developed," and that each BIA witness "will be examined on Defendant's procedures, approvals, oversight, protection, and management of Plaintiffs' land and mineral resources").

4

Nonetheless, for much the same reason that it declines to exclude the testimony of the ONRR and OST witnesses at this time, the Court will not exclude Mr. Laborda's and/or Mr. Black's testimony either. It cautions again, however, that neither party will be permitted to put on repetitious or needlessly cumulative testimony or other evidence.

## II.     The Government's Motion to Exclude Evidence on Counts 1, 5, 11, and 12

On August 16, 2023, the government filed a motion in limine concerning Counts 1, 5, 11, and 12 of Plaintiffs' Third Amended Complaint. See Def.'s Mot. to Exclude Evid. The motion requests that Plaintiffs not be permitted to present evidence concerning the claims in Count 1 except as to leases that were the subject of an auction the government held in November 2007, and that were approved on or after September 15, 2009. According to the government, Plaintiffs' interrogatory responses "defined Count 1 as limited to leases resulting from a November 2007 lease auction" and, because "[t]hey have never altered that response," they "should be held to it." Id. at 8.

In addition, the government asks the Court to preclude Plaintiffs from introducing any evidence as to Counts 5, 11, and 12 of Plaintiffs' Third Amended Complaint. See id. at 5–7; see also Third Am. Compl. ¶¶ 63–68, 101–22. The government contends that these counts "fall outside the scope of Plaintiffs' discovery or pretrial disclosures and should be excluded from trial to avoid wasting trial time." Def.'s Mot. to Exclude Evid. at 1.

For the reasons set forth below, the government's motion is **GRANTED** as to Count 1, but **DENIED** as to Counts 5, 11, and 12. The government, however, is invited to file a motion for summary judgment as to Counts 5, 11, and/or 12 by October 13, 2023, to which Plaintiffs shall respond by no later than October 27, 2023.

### A.     Count 1

In Count 1, Plaintiffs allege that the government breached its duty to "submit[] all leases" for oil and gas development on their allotted lands "to a competitive bidding process as required by statute and regulation." Third Am. Compl. ¶ 38. In addition, Plaintiffs allege, the government violated its fiduciary obligations by failing to advertise leases "to achieve 'optimum competition'" and approving leases that were not in Plaintiffs' best interests. Id. (quoting 25 C.F.R. § 212.20(b)(1)).

In 2021, the government moved for summary judgment as to the claim in Count 1 that the government breached a fiduciary obligation to submit all leases on Plaintiffs' allotted lands to a competitive bidding process. See Def.'s Cross-Mot. for Summ. J. at 14–15, ECF No. 180. It argued that the Court lacked jurisdiction over this claim because the Fort Berthold Mineral Leasing Act ("FBMLA"), Pub. L. No. 105-188, 112 Stat. 620 (1998) (codified as amended at 25 U.S.C. § 396 note), expressly states that DOI is not obligated to submit Plaintiffs' oil and gas leases to competitive bidding "through a public auction or advertised sale." Def.'s Cross-Mot. for Summ. J. at 14 (quoting FBMLA § 1(a)(4)).

The Court denied the government's motion for summary judgment as to Count 1. It agreed with the government that—in light of the FBMLA—DOI did not have a fiduciary obligation to subject leases of Plaintiffs' allotments to competitive bidding. Op. & Order at 10. It held, however, that once BIA opted to hold a competitive public-bidding process, it had a fiduciary obligation to advertise the leases to "'receive "optimum competition" for bonus consideration,' as required by 25 C.F.R. § 212.20(b)." Id. (quoting Third Am. Compl. ¶ 37). It also had a fiduciary obligation to ensure that it approved only those leases of Plaintiffs' allotments that "were in Plaintiffs' 'best interest,' as required by the FBMLA." Id. (quoting FBMLA § 1(a)(2)(A)(ii)).

The Court then considered whether the claims in Count 1 over which it otherwise had jurisdiction were barred by the Tucker Act's six-year statute of limitations. Id. at 17–20; see also 28 U.S.C. § 2501. The Court observed that the claims in Count 1, as defined in Plaintiffs' answers to the government's interrogatories, arose out of leases that the BIA advertised for sale between 2007 and 2009. Op. & Order at 18 (citing Def.'s Cross-Mot. for Summ. J. Ex. 2 (Pls.' Answers to Def.'s First Revised Interrogs.) at 3, ECF No. 180-1). The Court determined that Plaintiffs' claims regarding these leases were subject to a six-year limitations period that began to run when the leases were approved. Id. at 17–20. The Court concluded, therefore, that the statute of limitations barred Plaintiffs' Count 1 claims for leases that were competitively bid between 2007 and 2009, except as to those approved on or after September 15, 2009. Id. at 20, 25.

In its motion, the government states that the only competitive lease sale that was held between 2007 and 2009 was a November 2007 auction sale. Def.'s Mot. to Exclude Evid. at 8. It is of the view that, to proceed with Count 1, Plaintiffs are required to "identify a lease that resulted from the November 2007 auction (rather than private negotiation) and was approved on or after September 15, 2009." Id. at 9.

Plaintiffs respond that Count 1 should not be limited to leases that the BIA competitively bid between 2007 and 2009, but should also include privately negotiated leases that were approved on or after September 15, 2009. Pls.' Resp. to Def.'s Mot. to Exclude Evid. at 12–14, ECF No. 258. These privately negotiated leases are encompassed by Count 1, Plaintiffs maintain, because the government failed "to review [them] and ensure that all of the terms in the leases were in Plaintiffs' best interests." Id. at 13.

The Court is persuaded that—in light of their response to Interrogatory No. 4 in the government's first set of revised interrogatories—Plaintiffs should not be permitted to pursue claims at trial regarding the breach of fiduciary obligations with respect to privately negotiated leases. That interrogatory asked Plaintiffs to provide more details regarding their claims in Count 1 that the government 1) did not submit all leases to a competitive bidding process; 2) did not advertise the leases in the manner the regulations require; and 3) accepted leases that were either not approved in writing by a majority of the lessors or not in their best interests. Pls.' Answers to Def.'s First Revised Interrogs. at 2. Plaintiffs were asked to identify for each lease that was the subject of Count 1 "whether the lease was allegedly not submitted to a competitive bidding process, was allegedly incorrectly advertised, and/or was allegedly improperly approved." Id.; see also Third Am. Compl. ¶ 38.

Plaintiffs responded that "all of the oil and gas leases for their properties that were the result of an auction or bidding process administered at Fort Berthold by the United States were not subjected to a competitive bidding process and were not properly advertised." Pls.' Answers to Def.'s First Revised Interrogs. at 2. They noted that the United States was in a better position to identify the leases that were sold at auction but advised that they were "informed and believe that all leases on their properties that were entered into from 2007 through 2009 were the result of an auction or auctions conducted by the United States." Id. at 2–3.

This response to the government's interrogatory indicates that the claims Plaintiffs asserted in Count 1 involved leases that were subject to a public sale run by the government. It makes no mention of privately negotiated leases that were improperly approved or otherwise mishandled by the government. See id. at 2–3. Nor did Plaintiffs later supplement their response to include claims regarding privately negotiated leases. Indeed, in ruling on the government's motion for summary judgment, the Court understood, based on Plaintiffs' response to Interrogatory No. 4, that Count 1 concerned leases that were entered as a result of a competitive sale. Op. & Order at 10. Further, Plaintiffs make no mention of a claim based on privately negotiated leases in their pretrial filings. See Pls.' Mem. of Contentions of Fact & Law, ECF No. 220; Pls.' Witness List. The Court will therefore not permit Plaintiffs to introduce evidence at trial concerning the government's alleged breach of fiduciary obligations with respect to privately negotiated leases.

Plaintiffs also assert that Count 1 should be construed to include claims that the government breached its duty to notify Plaintiffs of assignments of their leases, and that they should be permitted to pursue damages for lease assignments executed within the limitations period. Pls.' Resp. to Def.'s Mot. to Exclude Evid. at 13–14. This claim is not referenced at all in Plaintiffs' Third Amended Complaint. Nor is it mentioned in Plaintiffs' pretrial filings. See Pls.' Mem. of Contentions of Fact & Law; Pls.' Witness List. Permitting Plaintiffs to amend their complaint now to include a claim based on the failure to notify them of lease assignments would be unduly prejudicial because it would require substantial new discovery. See Cooke v. United States, 79 Fed. Cl. 741, 742–43 (2007) ("Undue prejudice may be found when an amended pleading would . . . unreasonably broaden the issues[] or require additional discovery.").

Accordingly, the Court holds that Plaintiffs may not pursue claims based on the government's failure to apprise them of lease assignments or claims that the government improperly approved leases that were privately negotiated. Evidence regarding Count 1 will be limited to that which is relevant to Plaintiffs' claims regarding leases that resulted from competitive sales held between 2007 and 2009, and that were approved on or after September 15, 2009.

## B.    Counts 5, 11, and 12

The government, as noted, also asks that the Court not permit Plaintiffs to introduce any evidence at trial regarding Counts 5, 11, or 12. Def.'s Mot. to Exclude Evid. at 5–7. Plaintiffs allege in those counts that 1) the government breached its duty to enforce environmental regulations and standards and that, as a result, oil and gas operators have caused "multiple

environmental spills on the Plaintiffs' leased lands" (Count 5); 2) the government flooded several of their allotments "in order to create man-made lakes or other reservoirs on Fort Berthold," an action Plaintiffs contend amounts to a taking of their property for which they are entitled to compensation under the Fifth Amendment (Count 11); and 3) the government allowed oil and gas operators to waste Plaintiffs' mineral resources by venting and flaring natural gas without the BLM's approval and without paying royalties (Count 12). Third Am. Compl. ¶¶ 64–67, 102–05, 108–21.

The government contends that these claims "have fallen by the wayside over the course of this case." Def.'s Mot. to Exclude Evid. at 1. It asserts that Plaintiffs' pretrial filings contain "no facts" about these claims and that the failure to disclose factual contentions "makes inadmissible any evidence that Plaintiffs would nonetheless intend to present at trial." Id. at 1, 5; see also Pls.' Mem. of Contentions of Fact & Law. Plaintiffs respond that the government is asking the Court to effectively dismiss Counts 5, 11, and 12, and that its motion in limine is in reality "an impermissible motion for summary judgment." Pls.' Resp. to Def.'s Mot. to Exclude Evid. at 3.

Appendix A of the Rules of the Court of Federal Claims requires that parties file memoranda before trial containing "full but concise statement[s] of the facts [they] expect[] to prove" and "the issues of fact and law to be resolved by the court." RCFC App. A ¶ 14. Yet in their pretrial submission, Plaintiffs did not identify any facts that they intend to develop in support of Counts 5 and 11 (environmental spills and flooding). See Pls.' Mem. of Contentions of Fact & Law. Their sole factual contention with respect to Count 12 (venting and flaring) is a passing reference to "waste." Id. at 27; see also Pls.' Resp. to Def.'s Mot. to Exclude Evid. at 10.

Furthermore, Plaintiffs have not identified any witnesses in their proposed witness list who will testify about the environmental spills and takings claims, despite the requirement that their witness list "indicate the specific topics" each witness will address. RCFC App. A ¶ 15(a) (emphasis added); see Pls.' Witness List.

The absence of factual contentions in Plaintiffs' pretrial memorandum appears to be a symptom of a larger issue—namely, that Plaintiffs have not fully developed these counts during the discovery process. In their written response to the government's motion to exclude evidence on these counts, Plaintiffs are unable to identify evidence that relates to Count 5 and their allegations of environmental spills. See Pls.' Resp. to Def.'s Mot. to Exclude Evid. at 8–9. Regarding Count 11, Plaintiffs cite only answers to several interrogatories. Id. at 8. These answers identify two tracts of land that Plaintiffs say "were flooded when the United States built the Garrison Dam on the Little Missouri River," and reference a 2014 conversation with a BIA official who allegedly "acknowledged . . . that additional tracts had recently been flooded." Id. Ex. 1 (Pls.' Answers to Def.'s First Interrogs.) at 15–17, ECF No. 258-1.

When pressed at oral argument to identify other evidence that Plaintiffs have produced with respect to these claims, Plaintiffs' counsel stated that Plaintiffs have disclosed to the government "the exact location of the spillage" and will offer a document at trial "that shows where the spillage occurred." Oral Arg. Tr. at 18:8–19:4, 23:7–18, ECF No. 268. The government's counsel, for his part, disputed that Plaintiffs have identified the location of each

alleged environmental spill. Id. at 38:13–25. Plaintiffs' counsel also explained that his clients would be the only witnesses called to establish their takings claim. Id. at 36:21–37:9.

The Court cannot tell from the thin factual record before it, or from Plaintiffs' counsel's statements about the little testimony he would elicit at trial, how Plaintiffs expect to prove the elements of the claims in Counts 5 and 11—or even whether they really intend to pursue the environmental spills or takings claims at all. Obviously, Plaintiffs will not be able to establish takings liability and compensation due, or the government's responsibility for environmental harm, based solely on their own testimony. It is therefore somewhat bewildering to the Court that Plaintiffs have so far declined to formally withdraw these undeveloped claims.

To be sure, the factual record with respect to Count 12 seems more complete. See Pls.' Resp. to Def.'s Mot. to Exclude Evid. at 8, 10–12 (identifying interrogatory answers, Plaintiffs' expert report, and deposition testimony of six fact witnesses, all of which address venting and flaring). The government's counsel acknowledged at oral argument that there was less risk of the government being surprised at trial by evidence concerning Count 12 than by evidence regarding Counts 5 and 11. Oral Arg. Tr. at 7:18–8:1. Still, given the dearth of factual contentions in Plaintiffs' pretrial memorandum, it is not entirely clear to the Court from the portions of the record that it has seen what specific evidence Plaintiffs intend to present at trial in support of Count 12.

The Court is of the view that it has the authority to preclude the Plaintiffs from pursuing claims at trial that they have failed to identify or explain in any meaningful way in their pretrial filings. After all, one of the primary purposes of the contentions of fact and law is to avoid surprise and enable the Court and parties to make decisions about the scope and length of the trial. It cannot be, as Plaintiffs imply, that there is no consequence to a party's omission of entire claims in its pretrial submissions.

Nonetheless, to ensure fairness, the Court will not dispose of the claims before trial on the basis of Plaintiffs' pretrial submissions. The trial, which is scheduled to begin October 31, 2023, will be postponed to January 2024. Therefore, the Court invites the government to file a motion for summary judgment as to Counts 5, 11, and/or 12 in accordance with Rule 56.

## **CONCLUSION**

In accordance with the foregoing, the government's motion to exclude witness testimony, ECF No. 226, is **DENIED**. Plaintiffs are cautioned, however, that the Court will only hear testimony that is relevant to the remaining specific claims in the case and will exclude testimony that is cumulative.

The government's motion to exclude evidence on Counts 1, 5, 11, and 12, ECF No. 244, is **GRANTED** as to Count 1. Count 1 is construed to encompass only leases that resulted from competitive sales held between 2007 and 2009, and that were approved on or after September 15, 2009. The government's motion is **DENIED** as to Counts 5, 11, and 12.

The government is invited to file a motion for summary judgment as to Counts 5, 11, and/or 12 no later than **October 13, 2023**. If the government moves for summary judgment,

Plaintiffs shall respond no later than **October 27, 2023**, and the government shall file its reply no later than **November 3, 2023**.

        **IT IS SO ORDERED.**

s/ Elaine D. Kaplan  
ELAINE D. KAPLAN  
Chief Judge
